**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

HARLEY AUBREY GETSON,

               *Plaintiff*,

      *v.*

ANTHONY J. BLINKEN, *et al.*,

               *Defendant*.

CIVIL ACTION

NO. 23-4027

---

**MEMORANDUM OPINION**

Goldberg, J.                                         July 14, 2025

      Plaintiff, Harley Aubrey Getson brings this Mandamus action seeking to compel Defendants[1] to finally adjudicate the visa application Getson filed on behalf of her husband. Defendants move to dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), and for failure to state claims on which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Essentially, Defendants assert that Plaintiff's request has been finally adjudicated making this matter moot. Because I find that this matter is not moot and Plaintiff's Amended Complaint pleads plausible claims, the motion shall be denied.

---

[1]     The named Defendants are Anthony J. Blinken, Secretary of State, Rena Bitter, Assistant Secretary of State for Consular Affairs, and David Burger, the Deputy Chief of Mission of the U.S. Embassy in Athens, Greece. Although judicial notice may be taken that neither Blinken, Bitter nor Burger remain in their posts, until the filing of a formal motion to substitute the current office holders, their names shall be maintained in the caption and throughout the pleadings in this case.

## I.    STATEMENT OF FACTS[2]

Harley Getson ("Getson") is a 27-year-old citizen of the United States who married Mohammad Shirzad ("Shirzad"), an Afghan national, on September 10, 2021 in Greece.  (Am. Compl., ¶ 11).  Shirzad "is displaced, as he cannot return to Taliban-ruled Afghanistan."  (Id., ¶ 12).

On November 2, 2021, Getson filed an I-130 Petition for Alien Relative for Shirzad, which was approved by U.S. Citizenship and Immigration Services ("USCIS") and forwarded to the U.S. Department of State's National Visa Center on November 19, 2021.  (Id., ¶ 15).  Because USCIS prioritized processing for Afghan nationals in the wake of the Taliban takeover of Afghanistan, the petition was expeditiously approved.  (Id., n.1).  Getson paid the required Immigrant Visa fees on December 1, 2021, and she and Shirzad completed and submitted the DS-260 Immigrant Visa and Alien Registration Application for Shirzad on February 11, 2022.  (Id., ¶¶ 17-18).  Their case was subsequently forwarded to the U.S. Embassy in Athens, Greece, where thirteen months later on November 22, 2022, Shirzad appeared for his scheduled immigrant visa interview.  (Id., ¶ 19).  That same date, the U.S. Embassy in Athens issued a visa refusal worksheet, citing § 221(g) of the Immigration and Nationality Act ("INA"), indicating that Shirzad's original birth certificate or original ID with English translation were needed.  (Id., ¶ 20, Ex. F).  The worksheet included the declaration: "Please be advised that, for U.S. visa law purposes, including ESTA . . . this decision constitutes denial of a visa."  (Id.).[3]

---

[2]    All of the facts recited in this Memorandum are taken from the Plaintiff's Amended Complaint, filed on January 26, 2024 (ECF No. 9).

[3]    "ESTA" refers to the Electronic System for Travel Authorization, which is "an automated system that determines the eligibility of visitors to travel to the United States under the VISA Waiver Program" or "VWP."    See https://cbp.gov/travel/international-visitors-esta. "Authorization via ESTA does not determine whether a travel is admissible to the United States."

Shirzad then submitted his original birth certificate which was received at the Athens Embassy on December 13, 2022. (Am. Compl., Ex. G; Declaration of Stephanie Woodard, Attorney-Adviser in the Office of Assistant Legal Adviser for Consular Affairs, annexed to Defs.' Mot. to Dismiss, ¶ 5, ECF No. 17-1). On December 15, 2022, the consular section at the U.S. Embassy in Athens emailed Shirzad advising that the age reflected on his birth certificate was different from the age reflected on his Greek travel document and he needed to reconcile the discrepancy. (Woodard Decl., ¶ 5). On January 4, 2023, the Athens Embassy received a translated copy of Shirzad's birth certificate. (Id., ¶ 6).

On January 26, 2023, Getson's counsel sent an email to the U.S. Embassy in Athens noting that a visa status check reflected that it was still marked as "refused." (Id.). Counsel asked whether the documents Shirzad submitted were satisfactory for approval of his case, whether the case was still in administrative processing, and requested the Embassy to "provide a letter with the relevant ground of inadmissibility" if the visa application "was in fact refused." (Id.).

The Immigrant Visa Unit at the Embassy responded via email on January 30, 2023 by stating: "Based on our records, the case is pending for additional review of his documents. Please note that once we complete the process, an additional administrative process will be requested." (Id.). Thereafter, on February 17, 2023, the U.S. Embassy in Athens requested that Shirzad complete a supplementary questionnaire and submit additional documentation via email, informing him it "would be unable to continue with the processing of your immigrant visa application any further without the requested information." Shirzad responded on March 10, 2023 by submitting the completed questionnaire along with the requested documents to the Embassy in

---

Rather, the U.S. Customs and Border Protection officers determine admissibility upon travelers' arrival." Id.

Athens.  (Id., ¶ 33, Ex. H).  On March 23, 2023, the Athens Embassy initiated additional security screening.  (Woodard Decl., ¶ 7).

After the passage of some six months without hearing anything, on September 12, 2023, Getson's counsel again emailed the Embassy in Athens requesting an update on the status of Shirzad's application and asking when a final adjudication could be expected.  (Id., Ex. I).  The Athens Embassy's Immigration Visa Unit responded the following day advising that: "Based on our records, the case is still pending for further administrative processing.  Once the process is completed, Mr. Shirzad will be informed."  (Id., Ex. J).  Getson then filed this action on October 18, 2023 to compel Defendants to finally adjudicate the immigrant visa application  pursuant to the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act, 5 U.S.C. §§ 551 and 702.

On January 3, 2024, the U.S. Foreign Service issued another Refusal Worksheet again citing § 221(g) of the INA, and including the statement that "for U.S. visa law purposes, . . . this decision constitutes denial of a visa."  An additional notation read: "Additional security screening is being conducted.  Depending on the screening results, a consular officer may reconsider your eligibility for a visa."  (Id., Ex. K).  As of January 5, 2024, the "additional security screening" was "ongoing, and the visa application for Mohammad Shirzad remain[ed] refused under INA § 221(g), 8 U.S.C. § 1201(g)."  (Woodard Decl., ¶ 8).

Following the filing of an Amended Complaint on January 26, 2024, Defendants filed this motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Specifically, Defendants assert that the court lacks subject matter jurisdiction given that the visa application has been finally adjudicated and Getson's claims are therefore moot.  Defendants assert that to the extent Getson seeks to compel the State Department to reconsider the decision to refuse, Getson's claim is barred

by the doctrine of consular nonreviewability.  Finally, Defendants claim that Getson cannot show they violated a clear duty to act within a specific time frame and, even if there was a duty to act, any alleged delay in re-adjudicating the refused visa application is not unreasonable.

## II.    LEGAL STANDARDS

"Article III standing is an issue of subject matter jurisdiction and, therefore, a defendant may properly move to dismiss for lack of standing under Rule 12(b)(1)." Buckley v. Early Warning Servs., LLC, Civ. No. 20-5265, 2021 WL 5413887, at *1 n.1 (E.D. Pa. Sept. 28, 2021) (citing Constitution Party of Pa. v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014)).  Unlike a Rule 12(b)(6) motion, which is the proper vehicle for the early testing of a plaintiff's claims, a Rule 12(b)(1) motion challenges the existence of a federal court's subject matter jurisdiction, and the burden of persuasion is inverted.  Davis v. Wells Fargo, 824 F.3d 333, 349 (3d Cir. 2016).  When subject matter jurisdiction is challenged, the plaintiff bears the burden of persuading the court that it properly has jurisdiction.  Id. (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).  This differs from a Rule 12(b)(6) motion where the burden falls upon the party challenging the sufficiency of a pleading to show that no claim has been presented.  Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

A challenge to subject matter jurisdiction under Rule 12(b)(1) may take the form of either a facial or a factual attack.  Davis, 824 F.3d at 346; In re Schering-Plough Corp., 678 F.3d 235, 243 (3d Cir. 2012).  "A facial attack . . . is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court." Constitution Party of Pennsylvania v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014).  "Such an attack can occur before the moving party has filed an answer or otherwise contested the factual allegations of the complaint." Id. When evaluating a facial attack, courts apply the same standard of review used when "considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving

party." Aichele, 757 F.3d at 358. "In reviewing a facial challenge, which contests the sufficiency of the pleadings, 'the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.'" Id. (quoting Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000)).

"A factual attack, on the other hand, is an argument that there is no subject matter jurisdiction because the facts of the case – and here the District Court may look beyond the pleadings to ascertain the facts – do not support the asserted jurisdiction." Id. See also, Stouffer v. Union R.R. Co., LLC, 85 F.4th 139, 143 (3rd Cir. 2023) ("When examining subject matter jurisdiction, we may consider facts outside the pleadings."). The defendant can submit proof that in fact jurisdiction is lacking and the trial court is free to weigh the evidence and evaluate for itself the merits of the jurisdictional claims. Aichele, 757 F.3d at 358; Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). "In sum, a facial attack contests the sufficiency of the pleadings, whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." Aichele, 757 F.3d at 358 (internal quotation marks and citation omitted).

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also, Hedges, 404 F.3d at 750. More than "labels and conclusions" are required to satisfy "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id., at 679.

## III.    DISCUSSION

Getson filed this action to obtain a declaration that Defendants' delay in completing the background checks and adjudicating the visa application she filed on behalf of her husband violates the Administrative Procedure Act, and to compel Defendants to finally adjudicate the matter pursuant to both the Administrative Procedure and the Mandamus Acts.

A district court may issue a writ of mandamus under 28 U.S.C. § 1361 to compel an officer or employee of the United States to perform a duty owed to the plaintiff.  Ervin v. Ebbert, 518 F. App'x 73, 74 (3d Cir. May 3, 2013).  "In order for mandamus to issue, a plaintiff must allege that an officer of the Government owes him a legal duty which is a specific, plain, ministerial act devoid of the exercise of judgment or discretion."  Harmon Cove Condominium Assoc. v. Marsh, 815 F.2d 949, 951 (3d Cir. 1987) (internal quotation marks and citation omitted).  "An act is ministerial only when its performance is positively commanded and so plainly prescribed as to be free from doubt." Id.  Further, the common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief.  Heckler v. Ringer, 466 U.S. 602, 616 (1984).  Indeed, "the remedy of mandamus is a drastic one, to be invoked only in extraordinary situations."  Stehney v. Perry, 101 F.3d 925, 934 (3d Cir. 1996) (quoting Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980)).

Under § 702 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action" is "entitled to judicial review thereof."  Section 702 further authorizes a person so

aggrieved to file suit in federal court "seeking relief other than money damages and stating a claim

that an agency or an officer or employee thereof acted or failed to act in an official capacity or

under color of legal authority."  Section 706 empowers a court to "decide all relevant questions of

law, interpret constitutional and statutory provisions, and determine the meaning or applicability

of the terms of an agency action." Then, the reviewing court shall:

> (1) compel agency action unlawfully withheld or unreasonably delayed; and

> (2) hold unlawful and set aside agency action, findings and conclusions found to be –

>> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

>> (B)  contrary to constitutional right, power, privilege, or immunity;

>> (C)  in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

>> (D)  without observance of procedure required by law;

>> (E)  unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

>> (F)  unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706.

"Where no other statute provides a private right of action, the 'agency action' complained

of must be '*final* agency action.'" Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 61-62

(2004) (emphasis in original) (citing 5 U.S.C. § 704).  "[A] claim seeking relief under the APA can

proceed only where a plaintiff asserts that an agency failed to take a *discrete* action that it was

*required* to take," (that is, a non-discretionary action), and that the agency either failed to act or

unreasonably delayed in acting on that duty. Id., 542 U.S. at 64 (emphasis in original).

Most of the courts to have considered the issue generally agree that, for purposes of compelling agency action that has been unreasonably delayed, the Mandamus and Administrative Procedure Acts are co-extensive and both statutes are properly addressed together.  See e.g. Pohl v. United States EPA, Civ. No. 09-1480, 2010 WL 4388071 at *7 (W.D. Pa. Oct. 28, 2010); Han Cao v. Upchurch, 496 F. Supp. 2d 569, 575 (E.D. Pa. 2007) (internal citations omitted).  See also, Norton, 542 U.S. at 63 (noting that at least insofar as § 706(1)'s authorization for courts to compel agency action unlawfully withheld is concerned, "the APA carried forward the traditional practice prior to its passage when judicial review was achieved through . . . principally writs of mandamus . . .").

A.     Rule 12(b)(1)

"To invoke the jurisdiction of a federal court, a plaintiff must meet the 'irreducible constitutional minimum' of Article III standing."  Potter v. Cozen & O'Connor, 46 F.4th 148, 154 (3d Cir. 2022) (quoting Lujan v. Defs. Of Wildlife, 504 U.S. 555, 560 (1992)).  This requires a plaintiff to allege: (1) she suffered an injury in fact which is "concrete and particularized" and "actual or imminent," (2) that the injury is "fairly traceable to the challenged action of the defendant," and (3) that the injury is likely to be redressed by a favorable decision.  Id.  The injury claims can be neither "conjectural [n]or hypothetical."  Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009).  Standing is assessed as of the time a suit commences, but even where litigation poses a live controversy when filed, it must be dismissed as moot "if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than speculative chance of affecting them in the future."  Chamber of Commerce of the United States v. EPA, 642 F.2d 192, 199 (D.C. Cir. 2011).  Here, Defendants' 12(b)(1) motion may be read as challenging subject matter jurisdiction *both* facially and factually.

1.    Injury In Fact

First, a plaintiff's injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (internal quotations and citations omitted). An actual injury is "a concrete loss as the result of [the defendant's] actions." Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 190 (3d Cir. 2006).  A plaintiff may base standing on a future injury only if such injury is "certainly impending, or there is a substantial risk that the harm will occur." Reading v. North Hanover Twp., N.J., 124 F. 4th 189, 196 (3d Cir. 2024) (citing Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014)).

Getson avers she is suffering irreparable harm due to the Defendants' delay and inaction on her husband's visa application insofar as she has been separated from him for over two years, has been forced to incur significant expenses in traveling back and forth to see him, and because all aspects of her life, including her employment and the ability to plan for a family remain uncertain.  She has also been forced to incur legal fees in an attempt to obtain relief.  Getson seeks a declaration that "Defendant's 221(g) letter is not a final decision in this matter" and a final adjudication of Shirzad's visa application.  (Am. Compl., ¶¶ 41, 45, 65).  In support, Getson has attached numerous exhibits to her Amended Complaint, primarily copies of the emails referred to therein, which she alleges confirm the representations made in her pleading.  Upon review of these documents and the allegations set forth in the amended complaint, I conclude that they are sufficient to show that Getson has suffered, and is continuing to suffer, actual injuries which are concrete and particularized.

2.    Causation/Traceability

The second standing requirement – traceability – "is akin to but-for causation, not proximate causation." Adam v. Barone, 41 F.4th 230, 235 (3d Cir. 2022).  Traceability mandates

that there must be a causal connection between the injury and the conduct complained of, such that if there is a connection between the injury-in-fact and the defendant's actions – as opposed to the independent action of some third party not before the court – the causation element is met. <u>Dep't of Educ. v. Brown</u>, 600 U.S. 551, 561 (2023); <u>Gulden v. Exxon Mobil Corp.</u>, 119 F.4th 299, 306 (3d Cir. 2024) (internal quotation marks and citations omitted). Thus, an indirect causal relationship will suffice provided there is a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant. <u>Mielo v. Steak 'N Shake Operations, Inc.</u>, 897 F.3d 467, 480 (3d Cir. 2018). And where "a statute affords a litigant 'a procedural right to protect his concrete interests,' the litigant may establish Article III jurisdiction without meeting the usual 'standards for redressability and immediacy.'" <u>Brown</u>, 600 U.S. at 561 (quoting <u>Lujan</u>, 504 U.S. at 572).

Getson seeks a declaration that Defendants' delays in completing the necessary background checks and issuing a final adjudication of her husband's visa application are unreasonable and in violation of the Administrative Procedure and Immigration and Nationality Acts, 5 U.S.C. § 555 and 8 U.S.C. § 1201, *et. seq.* Invoking the Mandamus Act, 28 U.S.C. § 1361, Getson asserts that "[t]he Defendants have a clear, ministerial and non-discretionary duty to adjudicate the visa application as it has been properly completed and executed." She also asserts that the "delay in adjudicating the Department of State's only Congressionally mandated timeline, 180 days, threatens to ultimately deny [her] the benefit of living in marital union with her husband in the United States," and that she "is suffering particular and concrete injury because of the delay, . . . incurring significant expense and uncertainty of her future during years of high vitality in life." (Am. Compl., ¶¶ 49, 51, 53).

Upon review of these allegations, I conclude that Getson has set forth a fairly traceable connection between her alleged injury and the Defendants' alleged conduct that gives rise to at least an indirect causal relationship between them. Viewing these averments in the light most favorable to Getson, I therefore find the traceability requirement has also been satisfactorily pled.

3.   Redressability

To satisfy the third standing element – redressability – a plaintiff must show that it is "likely, as opposed to merely speculative, that the alleged injury will be redressed by a favorable decision." Finkelman v. NFL, 810 F.3d 187, 194 (3d Cir. 2016) (internal citation omitted). In evaluating whether the necessary showing has been made, the "[c]ourts must be cognizant of the rule that a remedy must . . . be limited to the inadequacy that produced the injury in fact that the plaintiff has established." Mielo, 897 F.3d at 481 (quoting Gill v. Whitford, 585 U.S. 48, 68 (2018)).

Getson filed this action "in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed" to her. 28 U.S.C. § 1361. She also seeks an Order directed to the U.S. Department of State pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(1) to "compel agency action unlawfully withheld or unreasonably delayed," in satisfaction of the directive in § 555(b) of the APA that "each agency shall proceed to conclude a matter presented to it" within "a reasonable time." Assuming that the process proceeds and Shirzad is approved for an immigrant visa and is allowed to emigrate, Getson's alleged injuries will indeed be redressed. Accordingly, I find that Getson has succeeded in showing the redressability element as well, and she therefore survives Defendants' facial challenge to subject matter jurisdiction.

Turning next to consideration of Defendants' Rule 12(b)(1) motion as presenting a factual challenge, Defendants assert that Getson's claims are moot because, as reflected on the Refusal Worksheets issued on November 22, 2022 and January 3, 2024, the visa application was denied under INA Section 221(g).  Defendants thus submit they have no outstanding obligations or duties left to perform, and Getson has not suffered, and is not in danger of suffering, any actual or imminent harm.  Alternatively, Defendants contend that there are no "discrete agency actions" which they are "required to take" imposed on them by any statute and that in any event, the length of the delay in this case is not unreasonable.  Defendants thus contend they did not violate any duty owed to Getson.

In response, Getson contends that insofar as Shirzad's visa application is still in "administrative processing," it has not been finally adjudicated.  She submits she is not asking the court to compel the State Department to overturn a denied visa application but rather that it be compelled to finally adjudicate the application which has remained in administrative processing for approximately three years without any explanation for what the processing entails.

Resolving this dispute first requires a determination of what administrative processing is, what effect it has, and whether the State Department's denial of Shirzad's visa on the Refusal Worksheets was in fact a "final adjudication."  The Third Circuit has not addressed whether a refusal under INA § 221(g) for administrative processing fulfills the Government's adjudicatory duty.  Other courts throughout the country, including within this Circuit, are split.  See, e.g., Hassan v. Dillard, 758 F. Supp. 3d 973 (D. Minn 2024) and Meleo v. Blinken, Civ. No. 23-3495, 2024 WL 4345289 (D.N.J. Sept. 30, 2024) (surveying cases).

A claim under § 706 of the APA "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required* to take."  Norton, 542 U.S. at 64; 5 U.S.C.

§ 706(1).  Notwithstanding that the Department of State has discretion as to whether to grant or deny a visa application, it has a nondiscretionary duty under 8 U.S.C. § 1202(b), 22 C.F.R. § 42.81(a), and 5 U.S.C. § 555(b) to decide the application.  Denisova v. Mayorkas, Civ. No. 23-1902, 2024 WL 2043664 at * 2 (W.D. Pa. May 8, 2024); Azam v. Bitter, Civ. No. 23-4137, 2024 WL 912516 (D.N.J. March 4, 2024).  And to be reviewable, the 'agency action' complained of must be a *final* action.  Norton, 542 U.S. at 61-62 (quoting § 704).  "'[A]gency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).  Final agency action may be found when an agency's decision-making process is at an end.  See, Fund for Animals v. Williams, 391 F.Supp.2d 132, 137 (D.D.C. 2005).

Generally speaking, "two conditions must be satisfied for agency action to be final." Bennett v. Spear, 520 U.S. 154, 177 (1997).  "First, the action must mark the 'consummation' of the agency's decision-making process . . .  it must not be of a merely tentative or interlocutory nature. . . ."  Id.  "And second, the action must be one by which 'rights or obligations have been determined' or from which 'legal consequences will flow.'"  Id. at 178 (internal citations omitted); Chemours Co. FC, LLC v. United States EPA, 109 F.4th 179, 184 (3d Cir. 2024).

Additional factors considered in the Third Circuit in deciding whether an agency's decision is final include: (1) whether the decision represents the agency's definitive position on the question; (2) whether the decision has the status of law with the expectation of immediate compliance; (3) whether the decision has immediate impact on the day-to-day operations of the party seeking review; (4) whether the decision involves a pure question of law that does not require further factual development; and (5) whether immediate judicial review would speed enforcement of the relevant act.  Del. Dep't of Natural Res. & Envtl. Control of United States EPA, 746 F. App'x

131, 134 (3d Cir. 2018) (quoting Univ. of Med. & Dentistry of N.J. v. Corrigan, 347 F.3d 57, 69, n.7 (3d Cir. 2003)).  An agency determination of a particular issue that will not be reconsidered in subsequent agency proceedings may represent the consummation of the agency's decision-making process on that issue.  Minard Run Oil Co. v. United States Forest Serv., 670 F.3d 236, 248 (3d Cir. 2011).

With this precedential background in mind, I now review the applicable agency process. Under 8 U.S.C. § 1154(a)(1)(A)(i) and 8 C.F.R. § 204.1, a noncitizen seeking an immigrant visa on the basis of a family relationship with a U.S. citizen must first file a Form I-130 Petition for Alien Relative ("visa petition") with United States Citizenship and Immigration Services ("USCIS")[4] to confirm that a qualifying familial relationship exists.  After investigation of the facts of the case and if the noncitizen is found to qualify for the preference allotted to family-sponsored applicants, the petition for the immigrant visa is approved and the petition's beneficiary may then proceed to apply for an immigrant visa.  8 U.S.C. § 1154(b); 22 C.F.R. § 42.21.  If the noncitizen beneficiary/applicant is not located within the United States, the approved visa petition is sent by USCIS to the State Department's National Visa Center ("NCV") for pre-processing.  8 U.S.C. §§ 1154(b), 1202; 8 C.F.R. 204.2(a)(3).  The NVC then contacts the applicant to gather required documents and collect the necessary fees. See, Dep't of State, Bureau of Consular Affairs, *Step 2: Begin National Visa Center (NVC) Processing.* www.travel.state.gov/en/us/visas/immigrate/the-immigrate-visa-process/step-2-begin-nvc-processing.html.  Once the NVC has verified that the minimum required documentation has been submitted and the fees have been paid, the application is deemed "documentarily complete."

---

[4]    USCIS is "an agency housed within the Department of Homeland Security." Dep't of State v. Munoz, 602 U.S. 899, 904 (2024).

When the U.S. Embassy or Consulate with jurisdiction over the applicant's place of residence determines an appointment is available, the NVC schedules him or her for an immigrant visa interview before a consular officer to make and execute a visa application. 22 C.F.R. § 40.1(h). The visa case is then sent to that post. 8 U.S.C. § 1202; 9 FAM 504.4-6a; www.travel.state.gov/en/us/visas/immigrate/the-immigrate-visa-process/step-9-upload-and-submit.html. At the interview, the applicant formally makes and executes a visa application before a consular officer, who must review and adjudicate it. 8 U.S.C. § 1202(b); 22 C.F.R. § 42.62(b)(1). When a visa application has been properly completed and executed before a consular officer, the consular officer must issue the visa, refuse the visa under § 212(a) or § 221(g) of the Immigration and Nationality Act, or other applicable law, or discontinue granting the visa (pursuant to an outstanding order under INA § 243(d)).

This is the procedure which was followed here. As noted previously, one year after Getson filed the I-130 petition on Shirzad's behalf and it was approved, Shirzad appeared for his scheduled visa interview at the U.S. Embassy in Athens, Greece on November 22, 2022. The consular officer in Athens found that Shirzad needed to supply additional documentation to clarify his birthdate and his visa application was refused that same day following the interview pursuant to INA § 221(g), 8 U.S.C. § 1201(g). Specifically, the Refusal Notice issued on November 22, 2022 included the following explanation:

> "Section 221(g), which prohibits the issuance of a visa to anyone whose application does not comply with the provisions of the Immigration and Nationality Act or regulations issued pursuant thereto. . . . The following remarks apply in your case: Original birth certificate or original ID with English translations."

(Am. Compl., Ex. F).

16

Shirzad then provided the requested materials – his original birth certificate and English translation – on December 13, 2022 and January 4, 2023. Nonetheless, no further action was taken despite numerous inquiries into the status of the application by Getson's counsel.

Then, in apparent response to Getson's filing of this action, a second Refusal Worksheet was issued on January 3, 2024, containing identical language to that in the original refusal worksheet notice of November 22, 2022 but without the reference to "original birth certificate or original ID with English translations." The Refusal Worksheet consisted of three substantive paragraphs:

Dear Visa Applicant:

This office regrets to inform you that your visa application is refused because you have been found ineligible to receive a visa under the following sections of the Immigration and Nationality Act. The information contained in the paragraphs marked with "X" pertains to your visa application. Please disregard the unmarked paragraphs.

X      Section 221(g) which prohibits the issuance of a visa to anyone whose application does not comply with the provisions of the Immigration and Nationality Act or regulations issued pursuant thereto. Please be advised that for U.S. visa law purposes including ESTA (*see https://esta.cpb.dhs.gov)*, this decision constitutes a denial of a visa. The following remarks apply in your case:

**"[t]he consular officer, after carefully considering your application and reviewing all available information, determined you have not established that you are eligible for a visa and denied your visa application under INA 221(g). Additional security screening is being conducted. Depending on the screening results, a consular officer may reconsider your eligibility for the visa.**

(Pl.'s Am. Compl., Ex. K) (italics and bold in original).[5]

---

[5]      Section 221(g), captioned "Nonissuance of visas or other documents," provides three grounds for "nonissuance." The statute states as follows in relevant part:

No visa or other documentation shall be issued to an alien if (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 182 of this title, or any other provision of law, (2) the application fails

Careful review of the second Refusal Worksheet in conjunction with other information properly considered at this stage of the case,[6] lead me to conclude that there has yet to be a final adjudication of the visa application at issue.

First, several of the State Department's own actions strongly suggest that the § 221(g) visa "denial" is not truly final.  According to the Declaration of Stephanie Woodard, Attorney-Adviser in the Office of the Assistant Legal Adviser for Consular Affairs (attached to Defendants' Motion to Dismiss), a search of the electronic Consular Consolidated Database of the U.S. Department of State, reflected that on March 23, 2023, the Athens Embassy (the "post") had initiated *additional* security screening of Shirzad's visa application which remains "*ongoing.*"   (ECF No. 17-1) (emphasis added).  This language is certainly consistent with a "tentative," not  "final" status.

Secondly and in a recent email sent on June 5, 2025, the U.S. Consul in Athens informed Shirzad  that:

> "the administrative process for your visa application has been completed.  To proceed with your application please provide the following documents: New DS-260 electronic application, Greek penal record for judicial use, IRS transcript for 2023 or 2024 from the petitioner, IRS transcript for 2023 or 2024 from the co-sponsor, W-2 statement for 2024 for the co-sponsor, Lixiarchiki Praxi Gamou

---

to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or other documentation under section 1182 of this title, or any other provision of law: *Provided,* That a visa or other documentation may be issued to an alien who is within the purview of section 1182(a)(4) of this title, if such alien is otherwise entitled to receive a visa or other documentation, upon receipt of notice by the consular officer from the Attorney General of the giving of a bond or undertaking providing indemnity as in the case of aliens admitted under section 1183 of this title . . .

8 U.S.C. § 1201(g).  It should be noted that section 1182(a)(4) includes within its purview "Family-sponsored immigrants."  8 U.S.C. § 1182(a)(4)(C).

[6]   In addition to the Plaintiff's Amended Complaint, I am also relying on documents attached as Exhibits thereto,  Defendants' Motion to Dismiss, and to the parties' letters to the Court, all of which are docketed.

(Marriage Certificate), new medical reports.  Upon receipt of these documents, we
*will* schedule a new appointment for you to retake your oath. (emphasis added).

(See Letter from Pl.'s Counsel (6/23/25) (ECF No. 44; Letter from Defs.' Counsel (6/9/25) (ECF
No. 43).  Although the term "completed" is used in this communication, the fact that further
information is requested is consistent with an ongoing – not final – administrative process.  This
is especially so when the communication states "we will schedule a new appointment."

Third, several of the relevant statutes and regulations provide support for Getson's position
that no final adjudication has occurred.  Under the APA, 5 U.S.C. § 555(b), agencies are directed
to "[w]ith due regard for the convenience and necessity of the parties or their representatives and
within a reasonable time . . .  proceed to conclude a matter presented to it."  And under 22 C.F.R.
§ 42.81,  "[w]hen an immigrant visa is refused, an appropriate record shall be made in duplicate
on a form prescribed by the Department [of State]."  The form must be signed and dated by the
consular officer, who must "inform the applicant of the provision of law or implementing
regulation on which the refusal is based and of any statutory provision of law or implementing
regulation under which administrative relief is available."  22 C.F.R. § 42.81(b).

Then,

"[i]f the ground of ineligibility may be overcome by the presentation of additional
evidence and the applicant indicates an intention to submit such evidence, all
documents may, with the consent of the alien, be retained in the consular files for a
period not to exceed one year.  If the refusal has not been overcome within one year,
any documents not relating to the refusal shall be removed from the file and
returned to the alien."

Id.  Section 42.81 further states in relevant part:

(c) Review of refusal at consular office.  If the grounds of ineligibility upon which
the visa was refused cannot be overcome by the presentation of additional evidence,
the principal consular officer at a post, or a specifically designated alternate, shall
review the case without delay, record the review decision, and sign and date the
prescribed form.  If the grounds of ineligibility may be overcome by the

presentation of additional evidence and the applicant indicates the intention to submit such evidence, a review of the refusal may be deferred. If the principal consular officer or alternate does not concur in the refusal, that officer shall either (1) refer the case to the Department for an advisory opinion, or (2) assume responsibility for final action on the case.

. . .

(e) Reconsideration of refusal.  If a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered. . . .

22 C.F.R. § 42.81(c), (e).

In the case before me, there is nothing to suggest that any documents were returned to either Shirzad or Getson in compliance with the foregoing regulations.  As Getson points out: how can additional documents be submitted to overcome the finding of ineligibility without any reference to the ground for ineligibility, and how could such materials be submitted within one year when more than two years have elapsed with no indication of why Shirzad is inadmissible or ineligible?

Fourth, on the Department of State-Bureau of Consular Affairs' website, under the heading "Step 12: After the Interview," an explanation of what to do "If Your Visa is Denied" is provided, along with a brief discussion of "administrative processing."  In pertinent part, it reads as follows:

In some situations[,] the consular officer does not have sufficient information needed to conclude that the visa applicant established eligibility for the visa sought. In those cases, the officer must refuse the visa application, and will do so under section 221(g) of the Immigration and Nationality Act.  If the reason you were unable to establish eligibility relates to a missing supporting documentation, then the consular officer will inform you if information or documents are missing and how to provide it.

**Administrative Processing**

Some visa applications refused under 221(g) of the Immigration and Nationality Act may require further administrative processing.  When administrative processing is required, the consular officer will inform the applicant at the end of

the interview.  The duration of the administrative processing will vary based on the individual circumstances of each case.  While the case is in administrative processing, the application must remain refused as the applicant has not established eligibility for the visa sought.  At the conclusion of the administrative processing period, the consular officer may conclude that an applicant is now qualified for the visa for which he or she applied.  The officer may also conclude that the applicant remains ineligible for a visa.

Except in cases of emergency travel (i.e. serious illnesses, injuries, or deaths in your immediate family), before making inquiries about status of administrative processing, applicants should wait at least 180 days from the date of interview or submission of supplemental documents, whichever is later.

www.travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-12-after-the-interview.html.  I find that this language also supports a finding that marking a visa application as "refused" is not a final adjudication where the applicant is informed that administrative processing or security screening is ongoing or where the applicant has been given the opportunity to provide additional information or documentation.

 Taken together, all of the circumstances in this case militate in favor of concluding that the action of placing a visa application into administrative processing following a "refusal," does **not** represent the State Department's definitive position on an applicant's admission.  Nor do these circumstances conclusively determine the applicant's rights, or  mark the "consummation" of the decision-making process.  Instead,  it is only when it is clear that the grounds of ineligibility cannot be overcome and the case has been reviewed by the principal consular officer that legal consequences flow from the refusal.  22 C.F.R. § 42.81(c).  Until then, the refusal at issue here appears to be "of a merely tentative or interlocutory nature."  <u>Bennett</u>,  520 U.S. at 178; <u>Chemours</u> 109 F.4th at 184;  <u>Minard,</u> 670 F.3d at 248.

While there is no binding precedent from the Third Circuit and a split among the various district courts to have considered this issue, I concur with the reasoning of Judge Cynthia Rufe in <u>Yu v. Blinken</u>, Civ. No. 24-6347, 2025 WL 1669055, at *6, 2025 U.S. Dist. LEXIS 111467 at *13-

14 (E.D. Pa. June 12, 2025) ("[i]f a 221(g) notice that places an application in administrative processing constitutes a final agency action and discharges the State Department's duty, the State could refuse any (or every) visa application for arbitrary reasons or (no reason at all), place it into the administrative processing queue, and then take far more time than is reasonable to adjudicate the petition."). Judge Rufe then observed that "[n]othing in the INA or the relevant implementing regulations suggests that Congress intended such a result." Given the tentative language used in the operative Refusal Worksheet at issue here (*e.g.* "additional screening to be conducted),[7] I find Judge Rufe's conclusions to be persuasive.

Other courts have reached similar results. See, e.g. Hassan v. Dillard, 758 F. Supp. 3d 973, 981 (D. Minn. 2024) ("If the State Department informs an applicant that he will receive another

---

[7]    It appears from the circumstances surrounding the issuance of the Refusal Worksheets in this case, that Shirzad's application failed to comply with the provisions of the Immigration and Nationality Act ("INA") and/or the accompanying regulations and that it was therefore denied pursuant to § 221(g)(2). Among the provisions of the INA with which Shirzad was required to comply is 8 U.S.C. § 1202(b). That statute provides in relevant part that "every alien applying for an immigrant visa must provide a "valid unexpired passport or other suitable travel document, or document of identity and nationality," a "copy of a certification by the appropriate police authorities stating what their records show concerning the immigrant," a "certified copy of any prison record, military record, and record of his birth," and a "certified copy of all other records or documents concerning him or his case which may be required by the consular officer." Should the immigrant establish to the satisfaction of the consular officer that any required document or record is unobtainable, the consular officer may allow the immigrant to provide "other satisfactory evidence of the fact to which such document or record would if obtainable, pertain." Subsection (b) concludes by decreeing that "[a]ll immigrant visa applications shall be reviewed and adjudicated by the consular officer."

It appears from the language of the first Refusal Worksheet that Shirzad had failed to meet his burden of showing eligibility for a visa pursuant to the above statute because additional documents clarifying his birthdate or place of birth were needed. Based on the second worksheet's statement that "additional security screening is being conducted," it may reasonably be inferred that the worksheet was issued because, as of that date, additional security documentation or evidence was still necessary for Shirzad to be classified as "eligible."

adjudication when the administrative processing is complete, then the State Department is essentially taking the position that the matter submitted to the agency has not been concluded while administrative processing is ongoing."); Ahmed v. Blinken, Civ. No. 24-153, 2024 WL 4903771 (D. D.C. Nov. 27, 2024) (finding Plaintiff plausibly alleged Defendants' five-year delay in adjudicating her visa was unreasonable, the court observed: ". . . Defendants do not provide any specific reasoning for their delay; instead they gesture broadly to agency discretion over 'allocation of consular services.'  While it is true that agencies possess 'wide discretion' in immigration matters, Defendants must still indicate that they follow a rule of reason to counterbalance Ms. Ahmed's allegations to the contrary."); Ebrahimi v. Blinken, 732 F. Supp. 3d 894, 904 (N.D. Ill. 2023) ("As other courts have noted, the State Department's use of 'will' in this communication all but guarantees the applicant another adjudication once administrative processing is complete. . . . These courts have concluded that, under these circumstances, the adjudication of the visa application is not yet complete and this court agrees."); Khazaei v. Blinken, Civ. No. 23-1419, 2023 WL 6065095 (D.D.C. Sept. 18, 2023) (holding that despite refusal of Plaintiffs' visa applications pending further administrative processing pursuant to § 221(g), "Plaintiffs' applications are still under consideration, such that their visas may yet issue" and "the Department's obligations under 5 U.S.C. § 555(b) and 706(1) continue to apply with equal force); Billoo v. Baran, Civ. No. 21-5401, 2022 WL 1841611 at *4 (C.D. Cal. Mar. 18, 2022) ("Pursuant to the Department of State's own statements and instructions on their website, the Court finds that these facts demonstrate that Mr. Ahmadzai has not received a final determination on his visa application."); Assad v. Holder, Civ. No. 13-0117, 2013 WL 5935631 (D.N.J. Nov. 1, 2013)

(finding refusal of immigrant visa application under Section 221(g) was "temporary" rather than "final" where administrative processing was ongoing).[8]

      Defendants rely heavily on what appears to be the only Circuit Court decision to consider the question before me.  In <u>Karamova v. Abate</u>, C.A. No. 23-5178, 2024 WL 3517852 at *4  (D.C. Cir. July 24, 2024), an unpublished, non-precedential opinion, the D.C. Circuit Court of Appeals held that because the Plaintiff's visa application had been considered by the consular officer at the interview and "officially refused" under 22 C.F.R. § 42.81, a final decision had been made and the "matter" had "already been 'concluded.'"  <u>Id</u>. at *4 (citing 5 U.S.C. § 555(b)).  <u>Karamova</u>, however, has not been consistently followed by district courts in other Circuits, nor has it been universally followed in the District of Columbia.  I also note that the D.C. Circuit's analysis of the issue is also rather sparse insofar as it merely accepts the Government's assertion that a "refusal" is the same thing as a final denial.

---

[8]  I have also considered cases that have reached a different conclusion.  <u>See</u> <u>e.g.</u>  <u>Bimbo Bakeries USA, Inc. v. Rubio</u>, Civ. No. 24-5919, 2025 WL 860493, 2025 U.S. Dist. LEXIS 49736 (E.D. Pa. Mar. 19, 2025) (Baylson, J.) (granting motion to dismiss for lack of subject matter jurisdiction based on <u>Karamova</u> and <u>Elhabash</u>, both <i>infra</i>, and attached copies of email and declaration from Assistant Legal Adviser for Consular Affairs averring that consular officer's issuance of notices of refusal under § 221(g) and 8 U.S.C. § 1201(g) discharged his discrete, non-delegable duty); <u>Meleo v. Blinken</u>, Civ. No. 23-3495, 2024 WL 4345289 at *8 (D. N.J. Sept. 30, 2024) (finding Plaintiff did not have standing to sue under APA and Mandamus Act for refusal of visa and placement into administrative processing because Court could not "compel the Government to do something it had already done: adjudicate Plaintiff's nonimmigrant visa application."); <u>Elhabash v. United States Dep't of State</u>, Civ. No. 09-5847, 2010 WL 1742116 at *3 (D. N.J. Apr. 27, 2010) (holding that even though visa application had been refused because further administrative processing was needed and refusal could be overcome after such proceeding was complete, Court was "without jurisdiction to hear case because the Embassy had denied the visa application pursuant to INA § 221(g)"); <u>Ameen v. United States Dep't of State</u>, Civ. No. 23-1397, 2024 WL 3416264 (E.D. Va. July 15, 2024) (holding Plaintiff failed to state claim under the APA because he failed to raise any mandatory procedures which were not followed – "an initial refusal followed by further inquiry is consistent with visa statutes and regulations"); <u>Denisova v. Mayorkas</u>, Civ. No. 23-1902, 2024 WL 2043664 at *3 (W.D. Pa. May 8, 2004) (following <u>Elhabash</u> and finding no live case or controversy because "refusal constituted a final agency action that renders this action moot.").

In conclusion, I agree with those courts who conclude that placement into administrative processing is *not* the equivalent of a final decision. As a reading of the relevant statutes and regulations suggests, it appears that "denial," "refusal," and "nonissuance" are being used interchangeably such that it is difficult, if not impossible, to discern whether there is any real difference in meaning between those three terms. Notwithstanding that the Refusal Worksheet stated that Shirzad's application was "denied, it also states that "additional security screening is being conducted." (Am. Compl., Ex. K). In not returning all of the consular file documents to Shirzad within one year, not referring the case to the Department for an advisory opinion and not complying with the requirements of 22 C.F.R. § 42.81, and in failing to inform Getson and Shirzad why he is inadmissible and/or ineligible for a spousal visa, the Government's actions are more consistent with an ongoing process, not a final adjudication. Because all of these actions strongly suggest that Shirzad may be eligible for the visa which he and Getson seek, and that, as of June 5, 2025 the Government may well be trying to start the whole process all over again, I conclude the § 221(g) denials which it issued to Shirzad were not *final* denials or the *final* word on his application. Therefore, Getson's claims are *not* moot, and I have proper subject matter jurisdiction to consider whether Defendants should be compelled to take further action pursuant to the Mandamus and Administrative Procedure Acts. The motion to dismiss under Rule 12(b)(1) is denied.

### B.    *Rule 12(b)(6)*

Defendants also move for dismissal of Getson's Amended Complaint for failure to state a claim on which relief can be granted. First, Defendants argue that by seeking to compel reconsideration of the visa application's refusal, Getson's claims are barred by the doctrine of consular nonreviewability. Further, they allege Getson cannot show they violated a clear duty to

act within a specific time frame and, even if there was a duty to act, any alleged delay in re-adjudicating the refused visa application is not unreasonable.

Although a narrow exception exists "'when the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen,'" as a general rule, "the Immigration and Nationality Act does not authorize judicial review of a consular officer's denial of a visa, and thus the federal courts cannot review those decisions." Munoz, 602 U.S. at 908 (quoting Trump v. Hawaii, 585 U.S. 667, 703 (2018)). This principle is known as the doctrine of consular nonreviewability." Id.[9] However, this doctrine only applies to final decisions, and it therefore does not preclude judicial review of a consular officer's delay when a visa application has been provisionally refused pending administrative processing or a final decision. Ahmed v. Blinken, 2024 WL 4903771 at *10; Hassan v. Dillard, 2024 WL 4979476 at *13. Accordingly, Defendants' motion to dismiss this action on the basis of consular nonreviewability is also denied.

Defendants' final request is that I dismiss Getson's claim that the administrative processing and security screening has been unreasonably delayed, causing her "irreparable harm and suffering." (Am. Compl., ¶ 41).

As both the APA and the Mandamus Act make clear, "while the statute and regulations governing visa applications do not provide a time fame within which the agency must adjudicate applications, 'the government does not have limitless discretion concerning the timing of processing applications.'" Denisova v. Mayorakas, 2024 WL 2043664 at *2 (W.D. Pa. May 8, 2024) (quoting Ahmed v. Holder, 12 F. Supp. 3d 747, 754 (E.D. Pa. 2014)). Unreasonable delay

---

[9]    It should be noted that the Supreme Court determined in Munoz that a United States citizen does *not* have a fundamental liberty interest in having a noncitizen spouse admitted to the country. Id., 602 U.S. at 909.

in taking a required action as mandated under these Acts is measured in the Third Circuit using the

factors enumerated in Oil, Chemical & Atomic Workers Union v. Occupational Safety & Health

Admin., 145 F.3d 120 (3d Cir. 1998):[10]

> First, the court should ascertain the length of time that has elapsed since the agency
> came under a duty to act.  Second, the reasonableness of the delay should be judged
> in the context of the statute authorizing the agency's action.  Third, the court should
> assess the consequences of the agency's delay.  Fourth, the court should consider
> "any plea of administrative error, administrative inconvenience, practical difficulty
> in carrying out a legislative mandate, or need to prioritize in the face of limited
> resources."

Id., at 123.  Application of these "OCAWU" factors to a particular case is "fact-intensive,"

"affording the agency considerable deference in establishing a timetable for completing its

proceedings."  Id. (internal quotation marks and citation omitted).

The record here reflects that Getson filed the I-130 Alien Relative Petition for immigrant

visa on behalf of Shirzad on November 2, 2021, it was approved by USCIS and forwarded to the

---

[10]    In districts outside the Third Circuit, reasonableness is generally measured using the so-called
"TRAC" principles outlined in Telecomms. Rsch. & Action Ctr. v. FCC, 750 F.2d 70, 80 (D.C. Cir.
1984):

> (1)  the time agencies take to make decisions must be governed by a rule of reason;
>
> (2)   where Congress has provided a timetable or other indication of the speed with
> which it expects the agency to proceed in the enabling statute, that statutory scheme
> may supply content for this rule of reason;
>
> (3)  delays that might be reasonable in the sphere of economic regulation are less
> tolerable when human health and welfare are at stake;
>
> (4)  the court should consider the effect of expediting delayed action on agency
> activities of a higher or competing priority;
>
> (5)  the court should also take into account the nature and extent of the interests
> prejudiced by delay; and
>
> (6)  the court need not find any impropriety lurking behind agency lassitude in order
> to hold that agency action is unreasonably delayed.

National Visa Center on November 19, 2021.  Thereafter, Shirzad was given an appointment and appeared before the U.S. Embassy in Athens on November 22, 2022, when his application was first refused and placed into administrative processing.  Using the November 22, 2022 date as the date on which the duty to act commenced, it has now been more than two years and a half years that Shirzad's application has been in administrative processing.

Based on this timeline, Getson asserts that she and Shirzad have suffered significant consequences as a result of this delay: they have been unable to reside together as husband and wife, unable to plan for a family, and she has incurred significant expenses in travelling back and forth to Greece to see her husband, among others.  As to the other OCAWU factors, however, there is no evidence or factual assertions on the present record.  I nonetheless find the allegations which do exist are sufficient to demonstrate that Getson's claim for unreasonable delay in violation of the Mandamus and Administrative Procedure Acts is plausible and the proper subject of discovery. For this reason, the motion to dismiss the unreasonable delay claim is also denied.

An appropriate Order follows.